IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

L<small>OS</small> L<small>OBOS</small> R<small>ENEWABLE</small> P<small>OWER</small>, LLC,
and L<small>IGHTNING</small> D<small>OCK</small> G<small>EOTHERMAL</small>
HI-01, LLC,
       Plaintiffs,

vs.

A<small>MERICULTURE</small>, I<small>NC</small>., and
D<small>AMON</small> S<small>EAWRIGHT</small>,
       Defendants.

No. 15-CV-0547-MV-LAM

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' First Motion to Dismiss [Doc. 13] and Defendants' Special Motion to Dismiss [Doc. 14]. Plaintiffs timely responded [Docs. 16-17] and Defendants replied [Docs. 25, 28]. The Court having considered the Motions, briefs, relevant law, and being otherwise fully informed, finds that Defendants' First Motion to Dismiss [Doc. 13] is **MOOT** and that Defendants' Special Motion to Dismiss [Doc. 14] is not well-taken and therefore will be **DENIED**.

### BACKGROUND

This case arises out of the fractious relationship between two neighbors in Hidalgo County, New Mexico. Plaintiffs are the beneficiaries of a lease from the Bureau of Land Management ("BLM"), pursuant to which they have developed a "geothermal power generating project located within Hidalgo County, New Mexico."

1

Doc. 23 ¶ 9. Evidently, Plaintiffs have "drilled five deep wells" on the leased property for the purpose of generating geothermal power. *Id.* ¶ 10. Defendant AmeriCulture, Inc., "is a corporation organized and existing under the laws of the State of New Mexico ('AmeriCulture') and its principal place of business is in Hidalgo County, New Mexico, on a tract of land that is adjacent to the Plaintiffs' geothermal electric power generating facility." Doc. 17 at 1-2. Defendant Damon Seawright is, "upon information and/or belief, the Chief Operating Officer of AmeriCulture, an offer and director and the principal shareholder of AmeriCulture." *Id.* at 2. Defendants operate a commercial fish farm devoted to raising tilapia. *See id.*

Apparently, Defendants' fish farm draws heated water from the same geothermal source as Plaintiffs' electricity generation facility, although at a temperature somewhat lower than that preferred for electricity generation; Plaintiffs deep wells are directed at securing minimum water temperatures of 250 degrees Fahrenheit, while Defendants' tilapia prefer a comparatively tepid 235 degrees Fahrenheit. *See id.* at 2. In order to harmonize the management of their shared geothermal resource, the Parties entered into the Joint Facility Operating Agreement ("JFOA"). *See* Doc. 23 ¶¶ 4, 14-21. Plaintiffs believe that Defendants breached this agreement in a variety of ways and, accordingly, brought suit in this Court. *See generally* Doc. 1. Defendants now move to dismiss the suit. *See generally* Docs. 13-14.

## DISCUSSION

### I. Defendants' First Motion to Dismiss [Doc. 13]

In this Motion, Defendants argue that Plaintiffs' Complaint [Doc. 1] fails to establish subject matter jurisdiction in this Court because the Complaint does not state a basis for the diversity of the Parties and that "Defendants are also entitled to dismissal of Plaintiffs' Count VII for" alleged violations of the New Mexico Unfair Practices Act for failure to state a claim. Doc. 13 at 1, 5, 10. *See also* Doc. 1 ¶¶ 79-83. In response, Plaintiffs submitted an Amended Complaint that clarified the basis for diversity jurisdiction in this Court and omitted the seventh count of the original Complaint. In the Court's view, this resolves all of the issues presented in Defendants' First Motion to Dismiss, such that the Motion is now moot.

To their credit, Defendants themselves concede that while "Defendants' First Motion to Dismiss was based upon Plaintiffs' failure to plead facts necessary to demonstrate diversity jurisdiction, and that under New Mexico law Plaintiffs' Count VII Unfair Practices Act claim failed to state a claim for relief" these deficiencies have been "cured by Plaintiffs' filing of their First Amended Complaint [Doc. 23], which also excluded the Unfair Practices Act claim." Doc. 28 at 1. Accordingly, "the relief requested in Defendants' First Motion to Dismiss is moot." *Id.* As explained above, the Court concurs with this analysis.

### II. Defendants' Special Motion to Dismiss [Doc. 14]

In their Special Motion to Dismiss, Defendants argue that they are "entitled to summary dismissal of the Complaint under New Mexico's Anti-SLAPP statute

(NMSA 1978, § 38-2-9.1), and a statutory award of attorneys [sic]." Doc. 14 at 1. The Court will deny Defendants' Special Motion because New Mexico's Anti-SLAPP statute is a procedural provision that does not apply in the courts of the United States.

    a. *Relevant Law in Diversity Cases*

Under the doctrine established by *Erie R. Co. v. Tompkins* and its progeny, in cases where federal jurisdiction is predicated on diversity, the district courts of the United States apply substantive state law, but federal procedural rules. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 77-79 (1938). *See also, e.g., Cuprite Mine Partners LLC v. Anderson*, 809 F.3d 548, 554 (9th Cir. 2015) ("Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural rules."); *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 517 (5th Cir. 2015). However, as Justice Reed noted in his partial concurrence to the opinion rendered in *Erie*, the "line between procedural and substantive law is hazy." *Erie*, 304 U.S. at 92. Since then, the courts of the United States have grappled with the parameters of this boundary. *See, e.g., Walker v. Armco Steel Corp.*, 446 U.S. 740, 744 (1980) ("The question whether state or federal law should apply on various issues arising in an action based on state law which has been brought in federal court under diversity of citizenship jurisdiction has troubled this Court for many years."); *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 416 (1996) ("Classification of a law as 'substantive' or 'procedural' for *Erie* purposes is sometimes a challenging endeavor.").

Helpfully, the United States Supreme Court recently reiterated the "test for either the constitutionality or the statutory validity of a Federal Rule of Procedure" when confronted with conflicting state provisions. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 406 (2010). As stated by the Court, the "test is not whether the rule affects a litigant's substantive rights; most procedural rules do." *Id.* at 407. Rather, what "matters is what the rule itself regulates: [i]f it governs only the manner and the means by which the litigants rights are enforced, it is valid; if it alters the rules of decision by which [the] court will adjudicate [those] rights, it is not." *Id.*

Stated otherwise, a "federal court exercising diversity jurisdiction should not apply a state law or rule if (1) a Federal Rule of Civil Procedure answer[s] the same question as the state law or rule and (2) the Federal Rule does not violate the Rules Enabling Act." *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1334 (D.C. Cir. 2015) (emphasis original, internal quotation marks omitted). *See also In re Cty. of Orange*, 784 F.3d 520, 527 (9th Cir. 2015) ("When confronted with an Erie question, we first ask whether a Federal Rule of Civil Procedure or a federal law governs. If so, we will apply that rule—even in the face of a countervailing state rule—as long as it is constitutional and within the scope of the Rules Enabling Act.") (citations omitted); *Royalty Network, Inc. v. Harris*, 756 F.3d 1351, (11th Cir. 2014) ("A federal rule applies in the face of a conflicting state rule, however, only if the federal rule comports with the Rules Enabling Act and the Constitution.") (citations omitted); *Nat'l Liab. & Fire Ins. Co. v. R &R Marine, Inc.*, 756 F.3d 825, 835 (5th

5

Cir. 2014) ("If a direct collision [between a federal rule and state law] exists, we must apply the Federal Rule as long as it does not violate either the Constitution or the Rules Enabling Act."). Importantly, the Supreme Court itself noted that "[a]pplying that test, we have rejected every statutory challenge to a Federal Rule that has come before us." *Shady Grove*, 559 U.S. at 407. For the reasons described below, this Court will not venture where the Supreme Court has not.

      b. *Precedent Regarding Anti-SLAPP Statutes in Diversity Cases*

Defendants concede that there is no Tenth Circuit precedent addressing this aspect of New Mexico's Anti-SLAPP statute. *See* Doc. 14 at 4 ("While no federal Court [sic] has on-point reviewed New Mexico's Anti-SLAPP statute…"). Accordingly, this Court must look to persuasive, rather than binding, decisions in resolving the matter before it. In surveying the legal landscape, this Court observes disagreement among the courts of appeals. The Court will examine these decisions and adopt the apposite reasoning that it finds most persuasive in the instant case.

The First Circuit has held that Maine's Anti-SLAPP statute applies in federal courts hearing diversity cases. *See Godin v. Schencks*, 629 F.3d 79, 86-87 (1st Cir. 2010) ("Rules 12 (particularly Rule 12(b)(6)) and 56 do not control" motions under the Anti-SLAPP provision and "the dual purposes of *Erie* are best served by enforcement of Section 556 in federal court."). The Court of Appeals for the Ninth Circuit has adopted a similar position with respect to California's Anti-SLAPP statute. *See United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 973 (9th Cir. 1999) ("We conclude that these provisions [of the Anti-

SLAPP statute] and Rules 8, 12, and 56 can exist side by side ... each controlling its own intended sphere of coverage without conflict.") (omission original, internal quotation marks omitted).  However, then-Chief Judge Kozinski has since urged the Ninth Circuit to abandon its decision in *Newsham*, reasoning that "[f]ederal courts have no business applying exotic state procedural rules which, of necessity, disrupt the comprehensive scheme embodied in the Federal Rules, our jurisdictional statutes and Supreme Court interpretations thereof." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 275 (9th Cir. 2013) (Kozinski, C.J., concurring).

By contrast, the United States Court of Appeals for the District of Columbia Circuit recently held that "a federal court exercising diversity jurisdiction may [not] apply the D.C. Anti–SLAPP Act's special motion to dismiss provision." *Abbas*, 783 F.3d at 1333.  In so holding, the court reasoned that, "[f]or the category of cases that it covers, the D.C. Anti–SLAPP Act establishes the circumstances under which a court must dismiss a plaintiff's claim before trial." *Id*.  However, "Federal Rules of Civil Procedure 12 and 56 'answer the same question' about the circumstances under which a court must dismiss a case before trial" and, moreover, "those Federal Rules answer that question differently." *Id*. at 1333-34.  Accordingly, the panel concluded that "Federal Rules 12 and 56 answer the same question as the D.C. Anti–SLAPP Act, and those Federal Rules are valid under the Rules Enabling Act" such that a "federal court exercising diversity jurisdiction therefore must apply Federal Rules 12 and 56 instead of the D.C. Anti–SLAPP Act's special motion to dismiss provision." *Id*. at 1337.

The United States District Court for the Northern District of Illinois, in an exceptionally lucid and cogent opinion reached the same conclusion with respect to Washington's Anti-SLAPP statute. *See Intercon Sols., Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1042 (N.D. Ill. 2013) ("Applying that analysis to the facts of this case, the Court finds that [the Anti-SLAPP statute] cannot be applied by a federal court sitting in diversity because it is in direct conflict with Federal Rules of Civil Procedure 12 and 56."). The Court explained that the Anti-SLAPP statute at issue "allows a court resolve a 'special motion to strike' and dismiss a plaintiff's claim on a preliminary basis in a different manner than it would otherwise resolve a preliminary motion attacking the merits of a case under Rules 12 or 56." *Id.* at 1041. Applying the *Shady Grove* framework, the court carefully explained that "by placing a higher procedural burden on the plaintiff than is required to survive a motion for summary judgment under Rule 56, Section 525 conflicts with Rule 12(d) and Rule 56 by restricting a plaintiff's procedural right to maintain [an action] established by the federal rules and therefore cannot be applied by a federal court sitting in diversity." *Id.* at 1048 (internal quotation marks omitted). In part, the court justified this conclusion by drawing from the Advisory Committee about the 1946 amendments to Rule 12, which, in the court's view, make clear that "Rules 12 and 56 were intended to provide the exclusive means for federal courts to use to rule upon a pretrial motion to adjudicate a case on the merits based on matters outside the complaint." *Id.* at 1048. Hence, the federal rules "answer the same question

that is in dispute in this case and, pursuant to *Shady Grove* and *Burlington Northern*, cannot be applied by a federal court sitting in diversity." *Id.*

    c. *The Instant Case*

The Court is persuaded by this latter line of reasoning and therefore concludes that New Mexico's Anti-SLAPP statute is inapplicable in this diversity case. The statute provides, in pertinent part, that "[a]ny action seeking money damages against a person for conduct or speech undertaken or made in connection with a public hearing or public meeting in a quasi-judicial proceeding before a tribunal or decision-making body of any political subdivision of the state is subject to a special motion to dismiss." N.M.S.A. § 38-2-9.1(A). However, "[n]othing in this section limits or prohibits the exercise of a right or remedy of a party granted pursuant to another constitutional, statutory, common law or administrative provision, including civil actions for defamation or malicious abuse of process." *Id.* at § 38-2-9.1(E). Straightforward application of the two-prong *Shady Grove* analysis makes patent that the Federal Rules of Civil Procedure, not New Mexico's anti-SLAPP statute, govern the instant case.

With respect to the first element of the *Shady Grove* framework, there can be no genuine dispute that the "Federal Rule of Civil Procedure answer the same question as" New Mexico's Anti-SLAPP statute. *Abbas*, 783 F.3d at 1334 (internal quotation marks omitted). Indeed, the three methods of disposing of SLAPP cases provided for in NMSA § 38-2-9.1(A), the motion to dismiss, the motion for judgment on the pleadings, and the motion for summary judgment, are described in Federal

9

Rules of Civil Procedure 12(b), 12(c), and 56, respectively. *See* NMSA § 38-2-9.1(A) ("…is subject to a special motion to dismiss, motion for judgment on the pleadings, or motion for summary judgment…"). Thus, the situation presented by New Mexico's Anti-SLAPP statute resonates strongly with the view of Rules 12 and 56 as "an integrated program for determining whether to grant pre-trial judgment in cases in federal court." *Abbas*, 783 F.3d at 1334 (internal quotation marks omitted). *See also Intercon*, 969 F. Supp. 2d at 1048 (explaining that Rules 12 and 56 "were intended to provide the exclusive means for federal courts to use to rule upon a pretrial motion to adjudicate a case on the merits based on matters outside the complaint."). Consequently, this Court, for the same reasons, holds that the Federal Rules of Civil Procedure "answer the same question as" New Mexico's Anti-SLAPP statute.

  Similarly, there can be no serious argument that "the Federal Rule does not violate the Rules Enabling Act." *Abbas*, 783 F.3d at 1333 (citing *Shady Grove*, 559 U.S. at 398-99). The Court need not now recite the lengthy analysis provided in *Abbas* or *Intercon*; instead, it is sufficient to note that "the Supreme Court has rejected every challenge to the Federal Rules that it has considered under the Rules Enabling Act" and that the decisions discussed above found that Rules 12 and 56 are "valid under the Rules Enabling Act." *Id.* at 1336-37. *See also Intercon*, 969 F. Supp. 2d at 1051 ("This Court agrees with [the United States District Court for the District of Columbia] that Rules 12(d) and 56 'fall squarely within the proper scope

10

of the Rules Enabling Act.'"). The Court adopts this analysis and finds that Rules 12 and 56 are valid under the Rules Enabling Act.

## CONCLUSION

For the foregoing reasons, Defendants' First Motion to Dismiss [Doc. 13] is **MOOT** and Defendants' Special Motion to Dismiss [Doc. 14] is not well-taken and therefore is **DENIED.**

Dated this 17th day of February, 2016.

_____
**MARTHA VÁZQUEZ**
UNITED STATES DISTRICT JUDGE

| | |
|---|---|
| Patrick J. Griebel, *et al.* | Charles N. Lakins |
| **Marrs Griebel Law, Ltd.** | **Lakins Law Firm, P.C.** |
| Albuquerque, New Mexico | Albuquerque, New Mexico |
| *Attorneys for Plaintiffs* | *Attorney for Defendants* |