IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LOS LOBOS RENEWABLE POWER, LLC
and LIGHTNING DOCK GEOTHERMAL
HI-01, LLC,

        Plaintiffs,

v.                                No. 2:15-cv-00547-MV-KRS

AMERICULTURE, INC., a New Mexico
for profit corporation and DAMON
SEAWRIGHT, Individually and as an
officer and director of AMERICULTURE
INC.,

        Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL

**THIS MATTER** comes before the Court Defendants' motion to compel discovery. (Doc. 92).[1] In the motion, Defendants claim Plaintiff Lightening Dock Geothermal H1-01, LLC ("LDG") failed to adequately answer eleven interrogatories and respond to one request for production. LDG asserts Defendants' motion is untimely and, alternatively, their responses, other disclosures, and subsequent supplements complied with their obligations. (Doc. 99). The Court has considered the parties' submissions along with the record available. Having done so, the Court **GRANTS in part** and **DENIES in part** Defendants' motion.

**I.    BACKGROUND**

LDG owns and operates a geothermal power generating project in Hidalgo County, New Mexico. (Doc. 23, Am. Compl.). As part of the project, LDG developed a wellfield to generate electricity comprised of, among other things, a federal lease of geothermal mineral rights and

---

[1] Defendants also moved to extend deadlines, but that motion appears to be moot in light of the parties' later agreement to extend deadlines, (*see* Doc. 100) and present posture of the case.

other entitlements to use real property for the purpose of facilitating the closed-loop system of transporting water. (*Id.*). Defendants purchased the fee land overlying the federal lease to operate a fish farm and sought to use LDG's geothermal resources for its farm. (*Id.*). To that end, the parties or predecessors, entered into a Joint Facility Operating Agreement ("JFOA"), to define their respective rights and obligations to use the resources as well as the surface fee land. (*Id.*). LDG claims Defendants have engaged in a course of conduct to impair LDG's rights under the agreement, subverting the power generating project. (*Id.*). LDG's amended complaint, filed on September 17, 2015 asserts breach of contract, breach of the covenant of good faith and fair dealing, prima facie tort, tortious interference, and negligent misrepresentation. (*Id.*). LDG asks for compensatory and punitive damages as well as indemnification, a declaratory judgement, specific performance, and injunctive relief. (*Id.*).

On June 26, 2019, Defendants propounded discovery to LDG. (Doc. 74). LDG initially objected without responding. (Doc. 76). Counting the subparts to each question as separate interrogatories, LDG insisted the total number exceeded the twenty-five interrogatory limit set out in the Court's scheduling order. (Doc. 77). Defendants disagreed and demanded LDG answer, claiming each subpart was part of the question's common theme and therefore not a separate interrogatory. (*Id.*). Pursuant to the parties' request, the Court held a status conference on August 9, 2019 to give the parties informal guidance on the subparts. (*Id.*). The Court's guidance, without the benefit of briefing, was that Defendants' interrogatories did not exceed the limit. (*Id.*).

On August 26, 2019, LDG served its answers and objections to Defendants' interrogatories. (Doc. 78). Not satisfied with the answers to Interrogatories 4, 6, 7, 8, 9, 10, 11, 12, 14, 15, 16, and 17 as well as Request for Production 1, Defendants sent LDG a Rule 37 letter dated October 9, 2019, demanding LDG fully respond by October 18, 2019. (Doc. 92-2).

Although the correspondence contained a lengthy recitation of the deficiencies, the main thrust was that LDG failed to answer *all* subparts and improperly characterized the questions as "contention" interrogatories. (*Id.*). LDG responded to the Rule 37 letter on October 18, 2019. (Doc. 92-3). LDG pointed out that, under the Local Rules, Defendants had accepted its objections because they had not, within twenty-one days, filed a motion to compel or raised the issues outlined it the Rule 37 letter. (*Id.*). Otherwise, LDG provided an equally lengthy explanation of why its answers were sufficient. (*Id.*).

Unable to resolve the dispute, Defendants moved to compel. (Doc. 92). The motion consists of a statement of the dates, the standard for discovery, and a conclusion that "Certain of the Plaintiff's discovery answers were insufficient, evasive, incomplete, and have hindered Defendants preparation of their case." (*Id.*). Defendants declined to repeat each deficiency but incorporated by reference their Rule 37 letter. (*Id.*) On November 19, 2019, LDG filed a response in opposition (Doc. 99) to which, on December 16, 2019, Defendants replied. (Doc. 103). The matter is now before the Court.

II. ANALYSIS

A. <u>**Timeliness**</u>

Under Local Rule 26.6, "[a] party served with objections to [a discovery request] must proceed under D.N.M.LR-Civ. 37.1 [for motions to compel] within twenty-one (21) days of service of an objection[.]" D.N.M. LR-CIV. 26.6. The Local Rule warns that "[f]ailure to proceed within this time period constitutes acceptance of the objection," but gives the Court the power *sua sponte* or upon motion for good cause shown to change the deadline. *Id.* A party's failure to file a motion to compel within the time frame itself warrants denying relief. *See Thymes v. Verizon Wireless, Inc.*, 2017 U.S. Dist. LEXIS 18657, at *2 (D.N.M. Feb. 9, 2017).

LDG's timeliness argument has some appeal. After receiving guidance from the Court on the subparts' dispute, LDG served discovery responses on August 26, 2019 with the offending objections. The instant motion came over two months later. Defendants did not file a motion to extend the deadline and offered no reason in their moving papers for waiting until October 9, 2019 to their raise challenges via a Rule 37 letter to LDG's discovery responses and October 31, 2019 to file a motion. LDG's response suggests Defendants "seek to have the 21-day deadline extended because they were attempting to resolve the discovery dispute through communication with LDG's counsel." But the record before the Court does not demonstrate any action to affirmatively extend the period. Even if communication with opposing counsel without *Court* intervention were adequate to change the deadline, no such communication occurred within twenty-one days after LDG served objections.

LDG, however, ignores the portion of the Local Rule that would start the running of the twenty-one-day period at a different date. Under Local Rule 26.6, a motion to compel must be filed within twenty-one days "unless the response specifies that documents will be produced or inspection allowed." Under that circumstance, a motion to compel must "within twenty-one (21) days after production or inspection of the documents." *Id.* Each of the challenged responses contains the phrase "Plaintiff will produce the exhibits it may use as a basis for its claims or at trial as required by the Court's Rule16(b) Scheduling Order." Thus, the twenty-one-day period begins to run from the date of production. Otherwise, Defendants could not know that LDG produced *all* responsive materials.

Contrary to Defendants' statement, there is no explicit requirement in the Court's scheduling order that the parties produce exhibits they may use at trial. When trial is scheduled, the Presiding Judge likely will set deadlines for the exchange of exhibits. Production of some or all of these documents may be required as part of initial disclosures under Federal Rule of Civil

Procedure 26 or, if requested, part of discovery. But the scheduling order does not mandate production. Instead, it places limitations on discovery and sets deadlines for completing and supplementing discovery. For example, the scheduling order, as extended, sets the termination of discovery on January 31, 2020. (Docs. 72; 100). Further, the parties must supplement discovery no later than thirty days after receipt of information requiring disclosure. (*Id.*). In short, based on LDG's discovery responses that it will produce additional information in accordance with the scheduling order, the Court is unable to ascertain when the twenty-one-day objection period starts. As a result, LDG's timeliness argument fails.

B. **Merits**

Alternatively, LDG argues that its discovery responses are adequate. For most requests, LDG contends, it has supplemented in one of three ways: by providing additional information in its (1) expert disclosures; (2) a first supplemental initial disclosures; (3) a second supplemental initial disclosures. (Doc. 99). Defendants submit LDG's responses remain "wholly inadequate" despite any this additional information. (Doc. 103). The Court addresses each challenged response in turn. As explained below, the Court largely agrees LDG has adequately responded to Defendants' discovery but directs LDG to supplement in general and more specific ways set forth the below.

LDG relies on its expert and supplemental initial disclosures to fully respond to individual discovery requests but, from what the Court can discern, LDG's actual responses to Defendants' first discovery contain no reference to these disclosures. LDG must therefore supplement its responses to specifically reference responsive materials in the expert and supplemental initial disclosures. *See* Fed. R. Civ. P. 33(d)(1) (allowing a party to reference business records to answer and interrogatory but requiring "sufficient detail to enable the interrogating party to locate and identify [the records] as readily as the responding party could").

Additionally, to the extent LDG has documents responsive to the challenged interrogatories and has withheld them because it plans to produce the documents in accordance with the Rule 16 scheduling order, the Court directs LDG to supplement each answer separately to refer with particularity to those documents that respond to the given interrogatory and produce the documents as ordered below. Finally, LDG must supplement is response to Request for Production 1 to ensure it has produced all responsive documents it may have withheld, or in the event LDG relies on additional materials in supplementing answers to interrogatories as directed below.

        1.     *Interrogatory No. 4.*

Defendants argue that LDG's expert report gives no specificity "whatsoever" as to LDG's damages' calculation as requested in Interrogatory 4 and LDG otherwise does not provide the information on damages that the initial-disclosure rule requires. (Doc. 103). But the sufficiency of LDG's initial disclosures is not before the Court, and it is not clear to the Court that LDG is required to do more, save for being more claim specific. LDG's answer identified four categories of damages: (1) special damages; (2) expert and attorneys' fees; (3) pre- and post-judgment interest; and (4) punitive damages. (Doc. 92-1). For special damages and expert and attorneys fees arising from LDG defending various bid protests, LDG provided its methodology and stated a preliminary amount. (*Id.*).

Defendants complain that LDG should have separately identified the economic impact of each bid protest LDG claims gave rise to the special damages. (Doc. 103). Interrogatory 4, however, does not ask for that type of itemization, (Doc. 92-1), and if Defendants believe initial disclosures require this specificity, they should have filed the appropriate motion and cited legal authority in support. While Defendants insist LDG did not produce documents that would support an adequate damages calculation, the Court declines to scour the record in a futile effort

to determine the veracity of this statement. If LDG indeed has not identified and produced documents it will rely on to support its damages, LDG likely will be foreclosed from introducing those documents at trial.

Defendants' real concern is not the adequacy of the damages' calculation but LDG's ability to recover damages at all or within a given timeframe. In its reply, Defendants assert "LDG . . . is seek[ing] to saddle Defendant with economic losses suffered by non-litigant and corporate affiliates, or caused by internal development delays, faulty equipment, failed injection wells, failed investments and loans, and liquidity challenges." (Doc. 103). Moreover, Defendants insist LDG is trying to recover damages "before becoming a party to the JFOA" and when it "was unable, even with permits in hand and no protests, to even generate a profit." (*Id.*) These arguments are more suited to a motion for summary judgment on damages, not a motion to compel.

LDG has not, however, identified "by each respective claim made in Plaintiff's First Amended Complaint the amount of damages claimed[.]" (Doc. 92-1). LDG does not assert this aspect of Interrogatory 4 is improper, and the Court will order LDG to provide a damages' calculation for each claim separately.

### 2.     *Interrogatories Nos. 6, 7, and 9.*

Interrogatories 6, 7, and 9 are designed to get at what LDG believes prohibited Defendants from developing competing geothermal power. (Doc. 92-1). To that end, Interrogatory 6 asked LDG to provide the factual basis for its claim that Defendants "would not engage in Power Use, or utilize the Geothermal Resources for doing so, or seek to generate electricity from the Geothermal Resources for any purpose other than Non-Power Use." (*Id.*). Interrogatory 7 sought the factual basis for LDG's contention that Defendants could not utilize their state lease to develop geothermal power. (*Id.*). And Interrogatory 9 requested the basis for

LDG's averment that Defendants improperly drilled geothermal wells adjacent to the fee land. (*Id.*)  In answering, LDG reproduced specific recitals from the parties' agreement as well as cited the duty of good faith and fair dealing as the bases prohibiting the development of competing power generating facility. (*Id.*).  LDG also pointed out that the state lease was invalid under New Mexico law. (*Id.*).  Otherwise, Interrogatories 7 and 9 referenced specific previous answers. (*Id.*)

Defendants' common refrain is that nothing LDG has provided prohibits the development of competing geothermal power.  For Interrogatory 6, Defendants insist LDG must establish Defendants relinquished their right to engage in power generation. (Doc. 103).  In terms of Interrogatory 7, Defendants complain "LDG fails to provide a single fact or document that even alludes to the prohibition of a geothermal electric power production facility that utilizes geothermal resources that underlie Defendant's New Mexico State Geothermal Lease." (*Id.*).  As for Interrogatory 9, Defendants claim that LDG did not provide the factual basis for the impermissibility of drilling adjacent geothermal wells or state no such basis exists. (*Id.*)

The Court concludes LDG has adequately answered these interrogatories.  The factual bases for LDG's contentions are easily ascertainable:  State law, along with the parties' agreement, either explicitly, or implicitly by operation of covenant of good faith and fair dealing, prohibited Defendants from engaging in power use (Interrogatory 6); using an allegedly *ultravires* state lease to develop geothermal power (Interrogatory 7); and drilling geothermal wells (Interrogatory 9).  If the cited provisions of the parties' agreement, or an implied covenant, do not support a given claim in the amended complaint, the solution is not to compel information, but to move for dispositive relief.

### 3. *Interrogatories Nos. 8, 10, 16*

Interrogatory 8 requested each alleged act of prima facie tort contemplated in paragraph 76 of the amended complaint. (Doc. 92-1).  LDG identified eight such acts, but Defendants

complain that LDG impermissibly qualified its answer by stating the acts included but were not limited to the eight. (*Id.*; 103). Defendants also insist LDG failed to answer subparts D and E, which asked for facts showing Defendants intended to cause harm and had knowledge their acts would cause harm. (Doc. 103). In Interrogatory 10, Defendants sought the basis underlying paragraph 15's contention that Defendants interfered with and obstructed the progress of the power generation project. (Doc. 92-1). Defendants claim LDG is required to, but did not, identify each provision of the JFOA and federal lease Defendants allegedly violated. (Doc. 103). Interrogatory 16 asked for the factual basis for LDG's allegation in paragraph 41 that Defendants construction of "a power plant on the Fee Land and utilizing geothermal resources underlying an adjacent State Geothermal Lease outside of the boundary of the Fee Land to generate electricity" violated state law and the JFOA. (Doc. 92-1). Defendants claim they are "entitled to a specific answer to each sub-part." (Doc. 103).

"Contention interrogatories that systematically track all of the allegations in an opposing party's pleadings, and that ask for 'each and every fact' and application of law to fact that supports the party's allegations, are an abuse of the discovery process because they are overly broad and unduly burdensome." *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M. 2007) (citations omitted). Interrogatories may not seek the equivalent of a narrative account of the plaintiff's case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents. *See Hiskett v. Wal-Mart Stores, Inc*., 180 F.R.D. 403, 404 (D. Kan. 1998). Interrogatories may, however, ask for the material or principal facts that support a party's contention. *Valdez*, 240 F.R.D. at 404.

In the Court's view LDG provided the principal and material facts of its prima-facie tort allegation.[2] LDG identified eight acts that principally form its contention and state that these acts, mostly bid protests, were aimed at frustrating LDG's efforts to develop geothermal power. Although Defendants claim that requesting hearings or participating in a protest "to insure that Plaintiff's proposed activities were consistent with the applicable laws and regulation is not intending to cause harm," (Doc. 103), that argument speaks to the legal viability of LDG's theory, not whether LDG provided sufficient information.

As for Interrogatories 10 and 16, LDG similarly disclosed the material and principal facts supporting its contentions. LDG's responses reference answers to Interrogatories 6, 7, and 8. Answer to Interrogatory 6 recited the provisions of the JFOA LDG says Defendants obstructed. (Doc. 92-1). Answer to Interrogatory 7 referred to "attempting to pursue a power plant," "proposing to use geothermal resources in amounts that foreclose LDG's intended use of the geothermal resource" despite Defendants' contrary promises in the JFOA, and obtaining a state lease in violation of N.M. Stat. Ann. §19-13-5(b), as acts of obstruction or delay, and bases prohibiting Defendants' actions. (*Id.*). Finally, answer to Interrogatory 8 identified the eight acts of interference or obstruction, primarily protests Defendants filed with the alleged purpose of delay. (*Id.*). To ensure there is no unfair surprise, however, LDG shall supplement its responses and verify there are no further material and principal facts on which LDG is relying as of the date of the supplement. In the event there are additional facts, LDG shall supplement accordingly.

---

[2] The Court recognizes that it has discretion to require LDG to answer each subpart and could conceive of reasons to require LDG to do so. However, Defendants neither ask the Court to exercise its discretion to do so nor point to the circumstances in this case that would warrant the Court to do so.

####	4.	*Interrogatory 11*

Interrogatory 11 sought the factual basis for LDG's contention in paragraph 37 of the amended complaint that Defendants "acquired an improvidently issued New Mexico State Geothermal Lease GTR-304-1." (Doc. 92-1). LDG answered by referring to paragraph 37 in its entirety and alleging the lease was obtained in violation of N.M. Stat. Ann. § 19-13-5(b). (*Id.*). Defendants insist they are "entitled to a detailed answered" including, as requested in subparts, how LDG "intends to establish such facts, or facts, by reference to a particular witness, or witnesses, or documents." (Doc. 103).

Interrogatories may not demand the equivalent of a narrative account of a party's case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents. *See Hiskett*, 180 F.R.D. at 404. Nonetheless, LDG must provide the material and principal facts of its contention. Paragraph 37 of the amended complaint does that: by acquiring a state geothermal lease for less than 640 acres on real property contiguous to the fee land and federal, Defendants obtained a lease that violated state statute. (Doc. 23). Nothing prohibits LDG from discharging its burden by referencing a detailed factual allegation from a pleading and pointing out the legal underpinning of its contention. As above, to ensure there is no unfair surprise, LDG shall supplement its response and verify there are no further material and principal facts on which LDG is relying as of the date of the supplement. In the event there are additional facts, LDG shall supplement accordingly.

####	5.	*Interrogatories Nos. 12, 14, 17*

Interrogatory 12 asked LDG to identify how Defendants acted in derogation of the parties' agreement and federal lease as alleged in paragraph 36 of the amended complaint. (Doc. 92-1). Interrogatory 14 sought paragraph 38's basis that Defendants are "improperly . . . attempting to utilize Geothermal Resources through the improvidently granted State Geothermal

Lease, not only in violation of State law, but in violation and breach of the JFOA[.]" (*Id.*). Interrogatory 17 requested the factual basis for paragraph 43's contention that Defendants' "acts and omissions have been intended to, and have been designed to, frustrate, and in fact have frustrated, the purposes of the JFOA and Plaintiff's rights thereunder, and to impede or delay or defeat implementation of the Project, and are in violation and breach of the JFOA and Defendant AmeriCulture's obligations . . . and also owed under the Federal Lease incorporated as if fully set forth in the JFOA." (*Id.*) Each interrogatory included multiple subparts.

The Court has reviewed LDG's identical answers to these questions, which purport to incorporate "all violations of [the parties' agreement], all actions AmeriCulture has pursued against LDG, and all actions AmeriCulture has taken to develop a geothermal power plant, and refers to its responses to all previous Interrogatories, and documents referenced therein." (Doc. 92-1). The Court agrees that these answers are vague, but more importantly declines to scour all responses to all previous interrogatories to determine the adequacy of these responses. *Cf.* Fed. R. Civ. P. 33(d)(1) (requiring "sufficient detail to enable the interrogating party to locate and identify [responsive materials] as readily as the responding party could"). LDG need not answer each subpart but shall supplement to provide the principal and material facts that support each of these contentions and verify it has done so.

      **6.**     *Interrogatory No. 15*

In Interrogatory 15, Defendants asked for the factual basis supporting LDG's allegation in paragraph 77 of the amended complaint that Defendants "made material misrepresentations concerning the Plaintiffs and the Project to numerous state agencies and other public bodies for the sole purpose of delaying and subverting the Project solely for the purpose of giving the Defendants a competitive advantage for the Defendants own intended production of Geothermal Power in violation of the JFOA." (Doc. 92-1). This interrogatory included multiple subparts.

LDG answered by referring to its response to Interrogatory 8, which identified eight acts that Defendants undertook, most of them the filing of protests, to frustrate LDG's efforts to develop geothermal power.

The Court agrees LDG did not adequately answer this interrogatory. While the items listed in response to Interrogatory 8 may have been the forum in which misrepresentations were made and may lend some support to LDG's theory, LDG has not said in material and principal terms *what* those misrepresentations were. The Court will not require LDG to answer each subpart so long as provides the material and principal facts of its contention in Paragraph 77 of the amended complaint and verifies it has done so.

## III. CONCLUSION

For the reasons stated above, Defendants' motion to compel was timely and the Court may consider the merits thereof. Although LDG's discovery responses are largely adequate, LDG must supplement its answers generally and certain responses specifically as explained above.

**IT IS, THEREFORE, ORDERED** that Defendants' motion to compel (Doc. 92) is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that LDG supplement its discovery responses as directed above on or before **February 7, 2020**.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE